DANIEL G. BOGDEN
United States Attorney

DANIEL R. SCHIESS
Assistant United States Attorney
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:13-cr-00192-LRH-GWF |
| Plaintiff, | PLEA MEMORANDUM |
| v. | |
| RONALD J. HOLMES | |
| Defendant. | |

The United States, by and through Daniel G. Bogden, United States Attorney, and Daniel R. Schiess, Assistant United States Attorney, the defendant, Ronald J. Holmes, and his attorney, Michael L. Lipman, submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

**I. SCOPE OF AGREEMENT**

The parties to this Plea Agreement are the United States of America and Ronald J. Holmes. This Plea Agreement binds the defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It

1

does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II. DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A. <u>Guilty Plea</u>. The defendant knowingly and voluntarily agrees to plead guilty to the one count of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. §1349.

The defendant also agrees to the forfeiture of the property set forth in the Forfeiture Allegation Section in this Plea Agreement.

B. <u>Waiver of Trial Rights</u>. The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

1. The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2. The right to confront the witnesses against the defendant at such a trial, and to cross examine them;

3. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4. The right to testify in his own defense at such a trial if he so chooses;

5. The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6. The right to have the assistance of an attorney at all stages of such proceedings.

C. <u>Withdrawal of Guilty Plea</u>. The defendant will not seek to withdraw his guilty plea after he has entered it in court.

D.  **Additional Charges.** The United States agrees not to bring any additional charges against the defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States, except that the United States reserves the right to prosecute the defendant for any crime of violence as defined by 18 U.S.C. § 16.

**III.   ELEMENTS OF THE OFFENSE**

A.  The elements of conspiracy to commit mail fraud, wire fraud, and bank fraud under 18 U.S.C. §1349 are the following:

   1.  Beginning and ending on the dates set forth in the indictment, there was an agreement between two or more persons to commit the crimes of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344); and

   2.  The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

See Ninth Circuit Manual of Model Jury Instruction, Criminal 8.20 (2010 ed.).

B.  The essential elements for the crime of mail fraud are the following:

   1.  The defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

   2.  The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

   3.  The defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

   4.  The defendant used, or caused to be used, the mails or a commercial interstate carrier to carry out or attempt to carry out an essential part of the scheme.

   *See* Ninth Circuit Manual of Model Jury Instructions, Criminal 8.121 (2010 ed.).

C. The essential elements for the crime of wire fraud are the following:

1. The defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

4. The defendant used, or caused to be used, interstate wire communications to carry out or attempt to carry out an essential part of the scheme.

*See* Ninth Circuit Manual of Model Jury Instructions, Criminal 8.121 and 8.124 (2010 ed.).

D. The essential elements for the crime of bank fraud are the following:

1. The defendant knowingly carried out a scheme or plan to obtain money or property from lenders by making false statements or promises;

2. The defendant knew that the statements or promises were false;

3. The statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

4. The defendant acted with the intent to defraud; and

5. The lender was a federally insured financial institution.

*See* Ninth Circuit Manual of Model Jury Instructions, Criminal 8.127 (2010 ed.).

IV. **FACTS SUPPORTING GUILTY PLEA**

A. The defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

4

B. The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt and establish its right to the forfeiture money judgment. The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

C. The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D. The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

1. From in or about 2006, to in or about 2009, Holmes conspired with others to commit mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344).

### The Objective of the Conspiracy

2. The objectives of the conspiracy were for the defendant and his coconspirators to obtain mortgage loans by fraudulent means to buy houses, to use some of the loan proceeds for themselves, in some instances to live in the houses, and in one instance file bankruptcy petitions to forestall foreclosure on one house so the defendant could continue to live in it.

### Manner and Means

3. The defendant and his coconspirators accomplished the objectives of the conspiracy by devising and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

4. It was part of the scheme that the defendant and his co-conspirators sometimes recruited people to be straw buyers and sometimes created straw buyers by using someone else's identity. A straw buyer is a person in whose name coconspirators buy a house

and submit a fraudulent loan application to a lender to obtain a mortgage for the purchase of the house.

5. It was further part of the scheme that the defendant and his coconspirators made and caused to be made materially false and fraudulent statements in the straw buyers' loan applications and related documents regarding the straw buyers' employment, income, assets, intent to occupy the property, roles as buyers, and other facts, and submitted and caused to be submitted the applications and supporting documents to lenders.

6. Some of the false statements that the defendant made and caused to be made in furtherance of the scheme include the following: (1) genuine people were buying houses when the defendant then and there well knew that the buyers were straw buyers; (2) a straw buyer signed loan documents when the defendant signed the documents in the straw buyer's name so the defendant could live in one of the houses; and (3) straw buyers worked for the defendant's company when the defendant then and there well knew they did not work for his company.

7. It was further part of the scheme that the defendant caused lenders to make loans to the straw buyers based on the materially false and fraudulent statements.

8. It was further part of the scheme that the defendant and his co-conspirators caused escrows for the transactions to close and loan proceeds to be disbursed to co-conspirators.

9. It was further part of the scheme that the defendant lived in two of the houses until lenders foreclosed on the houses because the defendant made few, if any, mortgage payments.

10. It was further part of the scheme that in or about 2007 and 2008, the defendant filed and caused to be filed bankruptcy petitions in the name of the straw buyer so the defendant could continue to live in the house.



11. In execution of the scheme, the defendant caused items to be mailed and sent by means of interstate wire communications. The wire communications include emails, facsimiles, and wire transfers of money.

12. Some of the lenders were federally insured.

13. Some of the properties used in the scheme and the names of the lenders and approximate dates of closings are set forth below.

| ADDRESS | CLOSING DATE | LENDER |
|---|---|---|
| 11335 Stella Cadente, Las Vegas, Nevada | 10/26/06 | Centralbanc Mortgage Corp. |
| 3787 Brittany Nicole, Las Vegas, Nevada | 9/27/07 | Citi Bank, N.A. |
| 3928 Sincerity Court, Las Vegas, Nevada | 8/27/08 | JPMorgan Chase Bank |

14. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code Section 2461(c) the defendant admits that the *in personam* criminal forfeiture money judgment of $100,000 is property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341, 1343, and 1344, specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 11961(1)(B), or Title 18, United States Code, Section 1349, conspiracy to commit such offenses, and is therefore subject to forfeiture. Pursuant to Title 18, United States Code, Section 982(a)(2)(A), the defendant admits that the *in personam* criminal forfeiture money judgment of $100,000 is property constituting, or derived from, proceeds obtained directly or indirectly as a result of violations of Title 18, United States Code, Sections 1343 and 1344, or Title 18, United States Code, Section 1349, conspiracy to commit such offenses, and is therefore subject to forfeiture.

V. **COLLATERAL USE OF FACTUAL ADMISSIONS**

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant

7

does not plead guilty or withdraws his guilty pleas, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf. The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A.   <u>Discretionary Nature of Sentencing Guidelines</u>. The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B.   <u>Offense Level Calculations</u>. The parties stipulate to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions:

| | |
|---|---|
| Base Offense Level (USSG § 2B1.1(a)(1)): | 7 |
| Loss Amount: $1,000,000-$2,500,000 (USSG § 2B1.1(b)(1)(I)): | 16 |
| Sophisticated Means (USSG § 2B1.1(b)(10)(C)) | 2 |
| Reduction for Acceptance of Responsibility (USSG § 3E1.1(a),(b)) | <u>(3)</u> |
| Total | <u>22</u> |

The defendant acknowledges that the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

C.   <u>Reduction of Offense Level for Acceptance of Responsibility</u>. Under USSG § 3E1.1(a), the United States will recommend that the defendant receive a two-level downward



adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (I) violates the conditions of pretrial release.

Under USSG §3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

These Sentencing Guidelines provisions, if applied, will result in a total offense level of 22, as stated above.

D. <u>Criminal History Category</u>. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

E. <u>Relevant Conduct</u>. The Court may consider all relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F. <u>Additional Sentencing Information</u>. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or



circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

VII. **APPLICATION OF SENTENCING STATUTES**

A. <u>Maximum Penalty</u>. The maximum penalty for conspiracy under 18 U.S.C. § 1349 is a thirty-year prison sentence, a fine of $1,000,000, or both.

B. <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendants sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

C. <u>Parole Abolished</u>. The defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

D. <u>Supervised Release</u>. In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release not greater than five years. 18 U.S.C. § 3583(b)(1). Supervised release is a period of time after release from prison during which the defendant will be subject to various restrictions and requirements. If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum prison sentence of 30 years.

E. <u>Special Assessment</u>. The defendant will pay a $100.00 special assessment per count at the time of sentencing.



## VIII. POSITIONS REGARDING SENTENCE

The United States will recommend that the defendant be sentenced to the low end of the applicable Sentencing Guidelines range as determined by the Court unless the defendant commits any act that could result in a loss of the downward adjustment for acceptance of responsibility. The defendant acknowledges that the Court does not have to follow that recommendation. The defendant also acknowledges that the Court does not have to grant a downward departure based on the defendant's substantial assistance to the United States, even if the United States chooses to file a motion pursuant to 18 U.S.C. § 3553(e)(1), USSG § 5K1.1, or Fed. R. Crim. P. 35. This Plea Agreement does not require the United States to file any pre or post sentence downward departure motion under USSG §5K1.1 or Fed. R. Crim. P. 35. Notwithstanding the agreement to recommend a sentence within the applicable range, the United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

The defendant may request a sentence below the Sentencing Guidelines range as calculated in this Plea Agreement pursuant to 18 U.S.C. § 3553 from any sentence the Court may impose, and the United States may oppose it.

## IX. RESTITUTION

In exchange for benefits received under this Plea Agreement, the defendant agrees to pay restitution in the amount of $1,668,586, which restitution shall be joint and several with any coconspirators who may be ordered to pay restitution on these transactions, but at this time no co-conspirators have been charged. The defendant cannot discharge his restitution obligation through bankruptcy proceedings. The defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## X. FORFEITURE

The defendant knowingly and voluntarily:

A. Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of a criminal forfeiture money judgment of $100,000 ("property");

B. Abandons or forfeits the property to the United States;

C. Relinquishes all right, title, and interest in the property;

D. Waives his right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings of the property ("proceedings");

E. Waives service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

F. Waives any further notice to him, his agents, or his attorney regarding the abandonment or the forfeiture and disposition of the property;

G. Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property;

H. Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7 and 32.2, the constitutional requirements, and the constitutional due process requirements of any proceedings concerning the property;

I. Waives his right to a jury trial on the forfeiture of the property;

J. Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings, including but not limited to (1) constitutional or statutory double jeopardy defenses; and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

K. Agrees to the entry of an Order of Forfeiture of the property to the United States;

L.  Agrees that forfeiture is immediately due and payable and subject to immediate collection by the United States;

M.  Agrees and understands the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the abandonment or the forfeiture; and

N.  The defendant acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than, the amount of restitution.

## XI. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay. The defendant will surrender assets he obtained directly or indirectly as a result of his crimes, and will release funds and property under his control in order to pay any fine, forfeiture, or restitution ordered by the Court.

## XII. COOPERATION

The defendant agrees, if requested by the United States, to provide complete and truthful information and testimony concerning the defendant's knowledge of all other persons who are committing or have committed offenses against the United States or any state, and agrees to cooperate fully with the United States and any state and local agencies in the investigation and prosecution of such persons. The defendant agrees that the information provided can be used against the defendant to establish relevant conduct for sentencing purposes.

In the event the United States Attorney decides in the sole discretion of the United States Attorney that the assistance provided by the defendant amounts to "substantial assistance" pursuant to USSG § 5K1.1, the United States will timely file a motion for downward departure

from the applicable Guideline calculation. The Court has the sole discretion to grant such a motion.

The defendant agrees that a motion for downward departure based on substantial assistance shall not be made under any circumstances unless the defendant's cooperation is deemed to be substantial assistance by the United States Attorney. The United States has made no promise, implied or otherwise, that the defendant will be granted a departure for substantial assistance. Further, no promise has been made that such a motion will be made even if the defendant complies with the terms of this Plea Agreement in all respects but has been unable to provide substantial assistance as determined in the sole discretion of the United States Attorney.

The United States agrees to consider the totality of the circumstances, including but not limited to, the following factors, in determining whether, in the sole discretion of the United States Attorney, the defendant has provided substantial assistance which would merit a motion by the United States for a downward departure from the applicable Guideline:

A. The United States' evaluation of the significance and usefulness of the defendant's assistance;

B. The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

C. The nature and extent of the defendant's assistance;

D. Any injury suffered, or any danger or risk of injury to the defendant or the defendant's family resulting from the defendant's assistance; and

E. The timeliness of the defendant's assistance.

The defendant agrees that in the event the United States files a downward departure motion based upon the defendant's substantial assistance, the United States reserves the right to make a specific recommendation to the Court regarding the extent of such a departure. The defendant understands and agrees that the final decision as to how much of a departure, if any, is warranted rests solely with the Court.

The defendant agrees that if the United States determines that the defendant has not provided full and truthful cooperation, or has committed any federal, state or local crime between the date of this agreement and the defendant's sentencing, or has otherwise violated any provision of this agreement, then (a) the agreement and any of its obligations hereunder may be voided by the United States in its sole discretion, (b) the defendant may not withdraw the guilty plea, and (c) the defendant shall be subject to prosecution for all federal criminal offenses of which the United States has knowledge, including but not limited to, perjury and obstruction of justice. Any such prosecution may be based upon any information provided by the defendant or leads derived therefrom.

### XIII. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A. <u>Plea Agreement and Decision to Plead Guilty</u>. The defendant acknowledges that:

1. He has read this Plea Agreement and understands its terms and conditions;

2. He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

3. He has discussed the terms of this Plea Agreement with his attorney;

4. The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

5. He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to

trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened his to enter into this Plea Agreement.

B. <u>Waiver of Appeal and Post-Conviction Proceedings</u>. The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Guidelines range determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. <u>Removal/Deportation Consequences</u>. The defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.



## XIV. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BODGEN
United States Attorney

10/24/13
DATE

*/s/ Daniel R. Schiess*
Daniel R. Schiess
Assistant United States Attorney

10/23/13
DATE

*/s/ Michael L. Lipman*
Michael L. Lipman
Counsel for Defendant

_____
DATE

*/s/ Ronald J. Holmes*
Ronald J. Holmes
Defendant