Daniel G. Bogden
United States Attorney

Daniel R. Schiess
Assistant United States Attorney
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702)388-6336

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| **United States of America**, | 2:13-cr-192-LRH-GWF |
| Plaintiff, | **Response to Defendant's Sentencing Memorandum** |
| v. | |
| **Ronald J. Holmes,** | |
| Defendant. | |

This is the government's response to defendant Holmes' sentencing memorandum. Holmes seeks a sentence of one year and a day. Nothing about this case justifies that sentence. Holmes is a repeat offender who failed to take advantage of the opportunities afforded him after his first conviction for mortgage fraud—the opportunity to stay out of jail and to learn from his mistake. Not long after completing his probationary period, Holmes returned to his fraudulently activities—he falsified loan documents with conspirators in both charged and uncharged frauds. But he did more, here he used straw buyers to obtain fraudulent loans and committed bankruptcy fraud to lengthen his stay in one of the

1

fraudulently obtained houses. After all that, Holmes now wants a mere year-and-a-day sentence. That would not be just.

## ARGUMENT

In June 2000, Holmes was sentenced to twelve months of probation for committing mortgage fraud. Then he had falsified information on loan documents, employment verifications, and Federal tax forms, using his name and his alias to purchase two properties. About two years after being released from probation, Holmes returned to committing mortgage fraud. He told the FBI in a March 21, 2013 interview that in 2003 he began providing false verifications of employment for co-conspirators.[1] Then in 2006, Holmes began committing the mortgage frauds in the present case. By this time, he turned to more devious frauds. Instead of falsifying loan documents in his real and fake names, he falsified them in the names of straw buyers, some of whom were in prison and had sold their identities to help the scam. But that was not all—Holmes and his family moved into one of the fraudulently-obtained houses and made few if any of the monthly payments while the lender worked to evict him. Eventually he was evicted. He and his co-conspirators then fraudulently purchased another house in another straw buyer's name for Holmes to occupy, and again Holmes made few if any of the monthly payments. (Plea Agreement, p.6.) But this time Holmes forestalled the eviction process even longer—he filed a bankruptcy petition in the name of the straw buyer to invoke the automatic stay, and when the petition was dismissed, he filed another fraudulent bankruptcy petition, and when that was dismissed, he filed still another. (Plea Agreement, p.6) Eventually he was evicted. All the while, he was falsifying loan documents for co-conspirators for other home loans.

And, while Holmes was committing these mortgages frauds and the bankruptcy frauds, he was raising his children to be pro athletes and running

---

[1] Holmes was not charged with these early frauds.

2

community programs that he now relies on to plead for mercy. While raising children and serving the community is praiseworthy, it appears that Holmes' motives were not completely virtuous. He intended to get something out of it for himself. He told the FBI in his March 21, 2013 interview that he had been living off of a loan tied his son's (Shabazz Muhammad) projected earnings as a top NBA prospect.[2] Holmes explained that he had worked out a deal with a "marketing company" that would pay him a portion of his son's salary, and that he expected to receive between $200,000 and $300,000 per year once his son was drafted into the NBA. He also explained that he receives a portion of his daughter's earnings as a professional tennis player. Because Holmes used his time to raise pro athletes and to run community programs and supplemented whatever money he earned by engaging in fraud, he should not be allowed to rely on his children or his community programs to talk his way into a lighter sentence. It simply seems inappropriate for him to have used his fraud to support his children and to run community programs and now to use them to argue for a lower sentence.

Holmes should also not be permitted to rely on his version of sentencing parity. While many mortgage fraud defendants in Nevada have received sentences ranging from probation to thirty something months,[3] none were repeat offenders for mortgage fraud. Holmes is, and he received probation for his first offense. And not long after he completed his probationary period, did he jump right back into it, this time engaging in more egregious conduct. To achieve parity he needs to receive a sentence than is longer that what most first time offenders received, and one that would also reflect his more egregious conduct.

He also needs a stiffer sentence to deter him and others from engaging in criminal conduct. What kind of a message would it send to Holmes and the

---

[2] Holmes made this statement to the FBI while his son was playing basketball at UCLA and planned to enter the next year's NBA draft and receive a multi-million dollar contract.
[3] Some defendants received much longer sentences.

3

community for Holmes to receive a sentence of a year and a day after receiving one of probation and then doing it again and again and again? And with good time, that year-and-a-day sentence would amount to a mere a four-month prison sentence followed by six months or so in a half-way house. But Holmes says he is remorseful for re-engaging in fraud. So are most people who get caught.

## CONCLUSION

The Court should reject Holmes' request for a year-and-a-day sentence and impose a 37-month sentence. This would provide a fair and just sentence for his being a repeat offender, engaging in more egregious mortgage fraud than he did before, and it would send a strong message of deterrence to him and to others.

Daniel G. Bogden
United States Attorney

*/s/ Daniel R. Schiess*

Daniel R. Schiess
Assistant United States Attorney

4

**Certificate of Service**

I certify that a copy of the foregoing reponse was served on counsel of record by having filed this response on the Court's electronic filing system.

*/s/ Daniel R. Schiess*
_____
Daniel R. Schiess
Assistant United States Attorney